**Francine HELTON, Plaintiff,**

v.

**AT & T, INC., et al., Defendants.**

**Case No. 1:10–CV–0857.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 2011.

---

John Rankin Ates, Ates Law Firm PC, Patricia A. Smith, Law Offices of Patricia A. Smith, Alexandria, VA, Allison C. Pienta, Stephen R. Bruce Law Offices, Washington, DC, for Plaintiff.

Katherine Anne Goetzl, Michelle Pretlow Thomas, Littler Mendelson PC, Washington, DC, for Defendants.

## ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendants AT & T Inc. and AT & T Pension Benefit Plan's ("Plan") Motion for Summary Judgment. (Dkt. No. 53.) This case concerns Defendants' alleged failure to notify Plaintiff of a change in the Plan's early retirement eligibility policy, resulting in Plaintiff's alleged loss of eight years of monthly payments to which she was entitled. There are four issues before the Court. The first issue is whether the Court should deny Defendants' Motion for Summary Judgment as to Plaintiff's claim for retroactive benefits (Count I) because the administrator's decision was an abuse of discretion where there is not substantial evidence to support the determination that the administrator notified Ms. Helton of the change in the Plan's eligibility requirements. The second issue is whether the Court should deny Defendants' Motion for Summary Judgment as to Plaintiff's claim that Defendants did not comply with ERISA's disclosure requirements (Count II) because she was not properly notified of the material changes to the Plan in a timely manner. The third issue is whether the Court should grant Defendants' Motion for Summary Judgment as to Plaintiff's claim for breach of fiduciary duty (Count III) because this claim, as plead, is not recognized as a matter of law, where Plaintiff otherwise has an adequate form of relief on her claim for retroactive benefits. The fourth and final issue is whether the Court should grant Defendants' Motion for Summary Judgment as to Plaintiff's claim for failure to provide requested information in violation of ERISA § 502(c) (Count IV) because Plaintiff was provided all of the information that was relied upon or considered in making a determination on her claim. First, the Court denies Defendants' Motion for Summary Judgment as to Count I because the Plan administrator committed an abuse of discretion in denying Plaintiff's claim by not engaging in a reasoned and principled decisionmaking process, and the determination is not supported by substantial evidence. Second, the Court denies Defendants' Motion for Summary Judgment as to Count II because there is a dispute of material fact as to whether Defendant employed a method of distribution that was reasonably calculated to ensure actual receipt when it sent out the requisite disclosures of the material changes to the Plan. Third, the Court denies Defendants' Motion for Summary Judgment on Count III because Plaintiff has adequately stated a cognizable claim for breach of fiduciary duty, and Plaintiff does not otherwise have an adequate remedy for Defendants' failure to inform her and correct her misunderstanding of her rights under the Plan. Finally, the Court grants Defendants' Motion for Summary Judgment because there is no dispute that Defendants provided to Plaintiff all of the information considered or relied upon in denying her claim for retroactive benefits.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. ANALYSIS

### A. *COUNT I*

▮▮▮ The Court denies Defendants' Motion for Summary Judgment because the Plan administrator's denial of retroactive benefits was not reasonable and, therefore, was an abuse of discretion. In reviewing the denial of benefits under an ERISA plan, a district court's first task is to consider de novo whether the relevant plan documents confer discretionary authority on the plan administrator to make a benefits-eligibility determination. *See Booth v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 340–341 (4th Cir.2000). When an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the administrator's decision for abuse of discretion. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir.2010) (citation omitted). Under this standard, a court will not disturb a plan administrator's decision if the decision is reasonable, even if the court would have come to a contrary conclusion independently. *Id.* at 630 (citation omitted). "To be held reasonable, the administrator's decision must result from a deliberate, principled reasoning process and be supported by substantial evidence." *Id.* (citation and internal quotation marks omitted). The United States Court of Appeals for the Fourth Circuit identifies eight nonexclusive factors for courts to consider in reviewing the reasonableness of a plan administrator's decision:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Id.* (citing *Booth,* 201 F.3d at 342–43).

Here, the Plan's determination was not reasonable because it was not based on a reasoned, principled decision-making process and was not supported by substantial evidence; thus, the Plan abused its discretion in denying Plaintiff's claim. Plaintiff's claim was denied based on the determination that Plaintiff received proper notice of the Special Update. Specifically, the Benefit Plan Committee found that Plaintiff was sent the April 28, 1997 letter because "she was an active employee on that date," her address remained the same since at least 1988, and there was no indication that mail had been returned as undeliverable. Further, the Committee found that Ms. Helton requested and was sent a pension commencement package in 2001, which she never returned. In addition, without setting forth any findings as to Defendants' mailing procedures, the Committee found that Plaintiff "should also have received copies of the 1998 and the 2004 AT & TMPP (sic) Summary Plan Descriptions, which provided information on the Special Update and when participants could commence their package." Finally, the Committee found that, on August 31, 2009, an October 1, 2009 pension commencement package was sent to Plaintiff, which she commenced on the effective date. The Committee acknowledged Plaintiff's assertions that she did not (1) receive the 1997 letter or the SPDs or (2) request or receive a commencement package in 2001, but it did not give weight to this evidence or set forth any analysis as to how these assertions impacted its determination. Based on these findings, the Committee upheld the denial of her claim.

The denial of Plaintiff's claim was an abuse of discretion for two reasons. First, the Plan's decision was not reasonable because it was not based on a reasoned, principled decisionmaking process. The denial was based on the finding that the Plan sent Ms. Helton various notifications regarding the Special Update. However, neither the Plan nor the Committee evaluated the process by which notifications were allegedly sent to Ms. Helton. *See* 29 CFR § 2520.104b–1 (requiring the plan administrator to furnish notices by measures "reasonably calculated to ensure actual receipt of the materials"). Instead, the Committee seemed to rubberstamp without question the administrator's assertions that the materials were sent. Moreover, the Committee's acceptance of the Plan's assertions was done in the face of Ms. Helton's attestations that she never received any of these materials and never requested a 2001 commencement package as the administrator indicated was requested and sent. Ms. Helton's position, even though it was supported by other circumstantial evidence, such as the fact that the 2001 email did not contain a request for a commencement package, was not given any weight or consideration in the decision-making process. Thus, the decision was not based on a reasoned, principled decision-making process and was, therefore, unreasonable, because the Committee did not evaluate the process by which the Plan allegedly distributed the

notifications to Ms. Helton, and because Ms. Helton's evidence was not given any weight or consideration.

Second, the Plan administrator's decision was not reasonable because it was not supported by substantial evidence. The alleged distribution of the notifications is not supported by substantial evidence because there is no evidence demonstrating that the Plan used distribution methods that were "reasonably calculated to ensure actual receipt of the materials," and, as stated above, it appears the Committee simply rubberstamped the Plan's factual assertions without reference to any evidence in support thereof. Notably, there are no physical records of any mailing, mailing lists, or other business records indicating that these materials were mailed to Ms. Helton at all, and certainly no evidence specifically showing that the materials were sent to Ms. Helton at her home address, as Defendants claim. The affidavits of Ms. Stoia and Mr. Adam, while setting forth the mailing procedure that the Plan followed, do not speak to whether Ms. Helton was included on the list of individuals to whom the mailings were to be distributed or whether her home address was the address selected. As set forth in one of the screen shots that Plaintiff supplied in support of her Opposition, Defendants have the option of selecting an employee's home, office, or other location as the employee's mailing address, and there is no indication that Ms. Helton's home was selected, or that the home address was correct. In fact, the only screen shot indicating Ms. Helton's home address has an effective date of 2007, which does not demonstrate that this was the address used in the alleged mailings in 1997, 1998, 2001, or 2004.

In addition, there is a dispute of fact as to Ms. Helton's employment status, which could impact whether she was mailed the 1997 letter. Notably, there is a dispute as to the time period at which an employee needed to be on "active status" to be on the mailing list for the 1997 letter. The Distribution Matrix attached to Ms. Stoia's affidavit indicates that an employee had to be on active status on January 1, 1997. However, the Plan and Committee decisions indicate that an employee needed to be on active status at the time of the mailing. While there does not seem to be a dispute that Ms. Helton was an active employee on January 1, 1997, if she needed to be considered in active employee in April 1997, there is a dispute of fact as to whether Ms. Helton falls within this category based on the alleged leave of absence she took during this time period. Defendants claim that this is a *non sequitur* because the Distribution Matrix indicates that employees on leave would also receive the April 1997 mailing. However, there is a dispute of fact as to the types of leave that fall within this category and whether Ms. Helton's leave of absence qualified. Accordingly, based on the dispute as to Ms. Helton's status, the time at which Ms. Helton needed to definitively qualify as an active employee for mailing purposes, and whether her leave of absence was such that she was still sent the notification, even if not considered an active employee, it is disputed whether Ms. Helton falls within a category to which the 1997 letter was mailed.

Further, the Committee's findings as to the circumstances surrounding the alleged request for, and receipt of, a commencement package in 2001 are not supported by substantial evidence. There is no evidence that Ms. Helton requested a commencement package in 2001 aside from the case notes referring to a March 2001 email. The 2001 email from Ms. Helton referenced in the case notes does not contain any such request and instead asks whether it was true that she was not eligible for

benefits until age 65. Moreover, Ms. Banwart testified in her deposition that a question communicated via email would be responded to via email, which undermines the finding that a commencement package was sent in response to an email request with no email response. Further, there is no record of mailing to demonstrate that a commencement package was sent through a method reasonably calculated to ensure receipt. At the hearing on Defendants' Motion for Summary Judgment, Plaintiff argued that commencement packages are sent by way of certified mail, and there was no record of any receipt indicating that the 2001 commencement package had been sent. The evidence offered in supplemental briefing on this point demonstrates that there is a dispute of fact as to the method by which commencement packages are distributed and whether it is an actual policy or common practice to send such packages through certified mail. In any event, there was not substantial evidence to support the administrator's findings as to the request for, and distribution of, the 2001 commencement package.

Finally, the findings about the request for, and distribution of, the commencement package in 2009 are not supported by substantial evidence. In discussing the distribution of the commencement package in 2009, there is no acknowledgment or consideration of the fact that Ms. Helton did not initially receive the package and, only after she followed up on her request, was she sent another package that she actually received.[1] The circumstances surrounding this initial failed mailing support Ms. Hel-

ton's assertion that she has not received communications from AT & T. For these reasons, the Court denies Defendants' Motion for Summary Judgment as to Count I.

**B. *Count 11***

■ The Court denies Defendants' Motion for Summary Judgment as to Count II because there is a dispute of material fact as to whether the administrator complied with the requisite reporting and disclosure provisions regarding the material change to the Plan. ERISA and its interpreting regulations require deferred vested participants to be notified of material changes to a plan's eligibility rules within 210 days of the end of the plan year in which the change is adopted. *See* 29 C.F.R. 2520.104b–3. Plan administrators must "use measures reasonably calculated to ensure actual receipt of the material by plan participants," and such materials "must be sent by a method or methods of delivery likely to result in full distribution." 29 C.F.R. § 2520.104b–1(b)(1). "Where the employee's assertion of non-receipt is supported by circumstantial evidence, and the employer provides an equally weak assertion that notice was mailed, the issue of mailing should not be decided at summary judgment." *Custer v. Murphy Oil USA, Inc.,* 503 F.3d 415, 422 (5th Cir.2007).

Here, the Court finds that there is a dispute of material fact regarding the distribution of the 1998 SPD, which is the only communication that would qualify in substance and timeliness under the reporting and disclosure provision, and, there-

---

1. At the summary judgment hearing, Defendants offered an alternative explanation for the confusion surrounding the distribution of the 2009 commencement package, characterizing it as a timing issue rather than a failed mailing. However, even taking into account Defendants' alternative explanation, the Plan administrator did not identify or consider any

of the communications between Ms. Helton and AT & T regarding the mix up over the mailing, which gives credibility to Ms. Helton's complaint about not receiving materials from AT & T. Instead, the Plan administrator simply acknowledges that a 2009 Plan was sent and received by Ms. Helton.

fore, summary judgment is not appropriate. As stated above, Defendants merely outlined the mailing process they used and failed to produce any physical evidence demonstrating the process used for the mailing of the 1998 SPD or showing that Ms. Helton was included on the mailing list at issue. Moreover, there is a dispute as to the category of individuals to whom this mailing was distributed and whether Ms. Helton falls within the identified class of distributes. Specifically, there is a dispute as to whether the mailing was sent only to active employees or certain classes of Plan participants. Ms. Helton was not an active employee in 1998, and there is a dispute as to whether the 1998 SPD was sent to deferred vested participants like Ms. Helton. Ms. Helton stated in her own affidavit that she did not receive the mailing. The Court will not make a determination on this issue at summary judgment based on the competing weak evidence as to whether Ms. Helton was mailed the 1998 SPD. Therefore, in the face of this dispute of material fact, the Court denies Defendants' Motion for Summary Judgment.[2]

### C. Count III

The Court denies Defendants' Motion for Summary Judgment as to Plaintiff's claim for breach of fiduciary duty (Count III) because whether Defendants breached their duty to provide Plaintiff with information is a question of fact, and Defendants have not established that the requested relief is not appropriate as an alternative basis for relief as a matter of law. "Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts."[3] *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir.2001) (citations omitted). "Under common law trust principles, a fiduciary has an unyielding duty of loyalty to the beneficiary." *Id.* (citation omitted). "Naturally, such a duty of loyalty precludes a fiduciary from making material misrepresentations to the beneficiary." *Id.* (citations omitted). "However, a fiduciary's responsibility when communicating with the beneficiary encompasses more than merely a duty to refrain from intentionally misleading a beneficiary." *Id.* "ERISA administrators have a fiduciary obligation 'not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures.'" *Id.* (quoting *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir.2000)).

"Moreover, a fiduciary is at times obligated to affirmatively provide information to the beneficiary." *Id.* "The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Id.* (citation and internal quotation marks omitted). "The common law of trusts identifies two instances where a trustee is under a 'duty to inform.'" *Id.* "First, a fiduciary has a duty to give beneficiaries upon request complete and accurate information as to the nature and amount of the trust property." *Id.* (citation and internal quotation marks omitted). "Second, in limited circumstances, a trustee is required to pro-

---

2. Although the Court does not need to reach this issue based on its determination above, the Court rejects Defendants' argument that Plaintiff cannot raise this claim because she admitted she has not even read the materials. If Ms. Helton did not receive the materials, as she claims, the fact that she has not read the

materials since the inception of this litigation has no merit as to the viability of this claim.

3. Defendants do not dispute that the Plan administrator has fiduciary responsibilities, and an employer that also serves as Plan administrator takes on such responsibilities.

vide information to the beneficiary even when there has been no specific request." *Id.* (citation and internal quotation marks omitted). Generally, the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information; however, he is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection. *Id.* "In sum, the duty to inform entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (citation and internal quotation marks omitted.) "[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent-especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions." *Id.* at 381.

Congress provided individual beneficiaries with an avenue to seek equitable relief for a breach of fiduciary duty under ERISA. *Id.* at 385. Specifically, ERISA § 502(a)(3) provides: "A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* (quoting 29 U.S.C. § 1132(a)(3)) (emphasis added). "The phrase 'appropriate equitable relief encompasses those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).'" *Id.* (quotation omitted). The phrase "any other equitable relief as the court deems

appropriate" has been limited to back pay, injunctions and other equitable remedies and not to allow awards for compensatory or punitive damages. *Id.* (citation and internal quotation marks omitted). "However, even if the redress sought by a beneficiary under ERISA § 502(a)(3) is a classic form of equitable relief, it must be *appropriate* under the circumstances." *Id.* at 385. "For example, such relief is not "appropriate" equitable relief where Congress elsewhere provided adequate relief for a beneficiary's injury and there is no need for further equitable relief." *Id.* (citation and internal quotation marks omitted).

Here, the Court denies Defendants' Motion for Summary Judgment as to Count III because there is a question of fact as to whether Defendants breached their fiduciary duty by not responding to Plaintiff's question and apparent misunderstanding in her 2001 email about the Plan's eligibility requirements, and Demonstrates have not demonstrated that the relief Plaintiff seeks is not appropriate equitable relief as a matter of law. First, the facts show that Defendants failed to respond to Ms. Helton's 2001 email, in which she asked whether it was true that she is not entitled to her benefits until age 65. Even if Defendants sent out other notifications of the Special Update, and Ms. Helton had received them, this email demonstrates that she was still operating under the misunderstanding that she was not entitled to benefits until age 65. Defendants had the duty to correct her misunderstanding and inform her that the Plan had changed, such that, *inter alia,* she was eligible to receive benefits at age 55. Defendants' failure to properly inform Plaintiff of her rights under the Plan may constitute a breach of their fiduciary duty and is a question of fact for trial.

Second, the Court rejects Defendants' position that Plaintiff is not entitled to

relief on this claim as a matter of law as she otherwise has an adequate remedy for her claim for benefits because this claim addresses Defendants' failure to uphold their fiduciary responsibilities and inform Plaintiff of her rights. This claim is not a claim seeking benefits to which she is entitled under the Plan. While the appropriate remedy for Plaintiff's fiduciary duty claim may be an award of retroactive benefits, this similarity does not necessarily show that the claims are the same, it just so happens that the remedies coincide. However, the Court holds that if Plaintiff prevails on her claim for retroactive benefits under Count I, an award of the full amount of retroactive benefits would not be appropriate relief under Count III under the circumstances because it would allow an inequitable double recovery and would essentially improperly transform the remedy on her breach of fiduciary claim to one of compensatory or punitive damages. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Count III because whether Defendants breached their fiduciary duty is a question of fact for trial, and Defendants have not demonstrated that Plaintiff is not entitled to this relief as a matter of law.

### D. *Count IV*

██ The Court grants Defendants' Motion for Summary Judgment on Count IV because there is no dispute that Defendants provided to Plaintiff all of the information relevant to Plaintiff's claim for retroactive benefits. A Plan administrator is required to make available all documents, records, and other information relevant to a claimant's claim for benefits upon request. 29 C.F.R. 2560.503–1(j)(3). Documents are relevant to a claimant if the information was relied upon in making the benefit determination or was submitted, considered, or generated in the course of

making the benefit determination. 29 C.F.R. § 2560.503–1(m)(8).

Here, there is no dispute that Plaintiff was provided the administrative record in this case, which includes all of the information relevant to Plaintiff's claim because that was all that the Plan administrator considered or relied upon in denying Plaintiff's claim. As stated above, the denial was not based on substantial evidence, and it appears that the Committee and Plan administrator simply rubberstamped the employer's assertions without reviewing evidence in support thereof. Thus, it would be logically inconsistent to rule on Count I that the denial of Plaintiff's claim was not supported by evidence and then rule as to Count IV that Plaintiff was not provided all of the evidence considered. Accordingly, because Plaintiff was provided with all of the information that was relied upon or considered in the decision to deny her claim, the Court grants Defendants' Motion for Summary Judgment on Count IV.

### III. CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part Defendants' Motion for Summary Judgment.

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is DENIED in part and GRANTED in part. Specifically, Defendants' Motion for Summary Judgment is DENIED as to Counts I–III and GRANTED as to Count IV.